**The below described is SIGNED.**

**Dated: March 14, 2007**

*William J. Thurman*

**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | |
| **Meadows Operations Inc.,** | Bankruptcy Number 04-34702 |
| Debtor. | Chapter 7 |

### MEMORANDUM DECISION ALLOWING INTERIM COMPENSATION TO WOODBURY & KESLER

The matter before the Court is the First Interim Fee Application for Trustee's Counsel, Woodbury & Kesler. CPB Development, LC ("CPB") objects to the Fee Application because it requests fees for the Trustee acting as counsel for the estate, for services traditionally performed by a Trustee, and for duplicative and unreasonable amounts. The Court has independently reviewed the Fee Application and has a few concerns regarding the objections. The Court issues this Memorandum Decision to encompass its findings of fact and conclusions of law addressing those concerns.

**I.   JURISDICTION**

The Court has jurisdiction overt his matter pursuant to 28 U.S.C. §§ 157(b)(2)(B) and 1334. Venue is appropriate under 28 U.S.C. § 1408(1).

1

**II.  BACKGROUND**

The Debtor filed for chapter 11 relief on September 10, 2004.  At the time of filing for relief, the Debtor owned 1400 acres in real property located in Beaver County, Utah which included property known as the Elk Meadows ski resort.  Portions of the property were subject to individual long-term leases.  Another portion of the property was subject to a security interest held by CPB or its predecessor, Nimbus Loan Fund.

While the case was pending under chapter 11, Nimbus obtained relief from the automatic stay and allegedly foreclosed on the real property subject to its deed of trust.  In light of the foreclosure sale, the U.S. Trustee filed a Motion to Dismiss the case, arguing that the estate lacked sufficient resources with which to form a chapter 11 plan of reorganization.  The Court held a hearing on the Motion to Dismiss on March 7, 2005 and ruled that the case should be converted to chapter 7.  The Court entered an Order of Conversion on March 9, 2005 and Elizabeth Loveridge was appointed the chapter 7 Trustee.

In May, 2006, the Trustee received a phone call from a party purporting to lease property at the ski resort.  The Trustee began an investigation regarding the status of that lease which lead to a more comprehensive investigation regarding the title of the property which had allegedly been foreclosed upon by Nimbus.

Believing that her investigation would include complex legal issues, the Trustee filed a Motion to Retain Woodbury & Kesler, P.C. as counsel for the estate.  The Court granted the Trustee's Motion on May 26, 2006.  The resulting order authorized the Trustee to retain Woodbury & Kesler "upon the terms and conditions" set forth in the Trustee's Motion for Order Authorizing the Employment of Counsel.  The Trustee's Motion requested permission to retain

the services of Woodbury & Kesler and disclosed that the firm "is also the law firm for which Applicant serves as a shareholder." The Motion stated that the Trustee required counsel for the following purposes:

(A) To advise and consult with the Trustee concerning questions arising in the conduct of the administration of the estate and concerning the Trustee's rights and remedies with regard to the estate's assets and the claims of secured, priority and unsecured creditors and other parties in interest;
(B) To appear for, prosecute, defend and represent the Trustee's interest in suits arising in or related to this case including any suit to revoke discharge pursuant to 11 U.S.C. § 727;
(C) To investigate property, including real property and avoidance actions and prosecute actions, including actions arising under the Trustee's avoiding powers;
(D) To liquidate assets in the form of real property; and
(E) To assist in the preparation of such pleadings, motions, notices and orders as are required for the orderly administration of this estate.

The Trustee also filed an affidavit in support of her motion which indicated that she was an attorney and shareholder with Woodbury & Kesler and that her billing rate for legal services was $200 per hour. Throughout this case, she has filed pleadings and other court papers with the court indicating that she has been acting as counsel for the estate.

With the help of counsel, the Trustee determined that various portions of the real property were still property of the estate and had not been foreclosed upon by CPB. She further concluded that the estate held a position adverse to CPB and began preparing for an adversary proceeding to quiet title the property at issue. She ultimately decided with the advice of counsel that she could accomplish the results of a quiet title action through a Motion to Sell the remaining real property free and clear of liens and encumbrances pursuant to § 363(f) of the Bankruptcy Code.

The Court conducted a hearing on the Trustee's Motion to Sell on November 7, 2006. CPB initially objected to the Trustee's Motion as did the Beaver County Treasurer, the Elk

3

Meadows Special Service District and a number of real property leaseholders. After filing the Motion to Sell, however, the Trustee and her counsel negotiated a settlement of all objections. Upon consent of all parties, the Court approved the sale of the property and entered an order approving Sale on October 23, 2006. The settlement and sale resulted in full payment to all creditors of the estate except Nimbus and CPB. As a result of the Trustee's sale and settlement the estate received approximately $541,000.

On January 25, 2007, Woodbury & Kesler filed its First Application for Compensation as Trustee's Counsel. CPB objected to the requested fees and a contested hearing on the Fee Application ensued. The Court conducted a hearing on the Application on March 6, 2007. The Trustee submitted extensive testimony regarding the legal services discussed in the Application. The Court considers the Trustee's testimony to supplement the Application. For its part, CPB also presented evidence and made oral arguments on the record.

### III.  ANALYSIS

CPB objects to the requested fees because the application covers services rendered by the Trustee as a member of Woodbury & Kesler, arguing that the Court did not specifically authorize the Trustee to serve as her own counsel. CPB also argues that the requested fees encompass services which cannot be characterized as providing legal services and should be covered by the Trustee's fee calculation under 11 U.S.C. § 326.[1] Finally, CPB argues that the Fee Application requests compensation for duplicative and unnecessary services. The Court will address these arguments in turn.

####   A.    **The Court Authorized the Trustee to Serve as Counsel in this Case.**

---

[1] All statutory references herein are to the Bankruptcy Code unless stated otherwise.

CPB argues that the Court should disallow fees incurred by the Trustee as counsel because the Court did not specifically authorize the Trustee to serve in a dual role and that the Trustee's Motion to Retain Counsel did not make clear that she would be serving as counsel.

Under § 327(d), the Court may authorize the Trustee to act as an attorney for the estate "if such authorization is in the best interest of the estate." Bankruptcy Rule 2014 governs a trustee's application to retain counsel, requiring disclosure of the facts showing the necessity for employment, the name of the party to be employed, the reasons for the selection, the professional services to be rendered, any proposed compensation arrangements, and all of the professional's connections with the estate or parties in interest. Bankruptcy Rule 2014(b) provides that if a law firm is employed as counsel "any partner, member, or regular associate of the partnership. . . may act as attorney or accountant so employed, without further order of the court." Thus, where a court authorizes the employment of a trustee's law firm as counsel under Rule 2014, the trustee may serve as counsel without further order of the court so long as the trustee is a partner, member, or associate of that law firm. Of course, because the trustee is an officer of the estate, the application to retain the trustee's firm as counsel should disclose that connection. But beyond that, no additional disclosure or notice of the trustee's involvement is required.

The Court has reviewed the Trustee's Motion to Retain Counsel, the supporting affidavit, and the resulting Order and determines that the Trustee was authorized to serve as counsel for the estate. The Trustee's Motion sought permission to retain the law firm of Woodbury & Kesler, P.C. as counsel for the estate. The Motion disclosed that "Woodbury & Kesler, P.C. is also the law firm for which Applicant serves as a shareholder." The affidavit indicates that Ms. Loveridge would be billing at the rate of $200 per hour for legal services. Until the fee

5

application was filed, no parties objected to Ms. Loveridge's dual role as Trustee and counsel for the estate. Accordingly, the Court determines that the Trustee was authorized to act as counsel in this case.

CPB does not cite to any case law in arguing that a court's order authorizing a trustee to retain counsel should have specifically provide for the trustee's dual role.  It cites only to a provision of Collier's on Bankruptcy.  The Court has reviewed the cited provision and does not find any reference or discussion to support CPB's position.

**B.     Some of the requested fees are  for performing the Trustee's duties**

CPB also argues that a portion of the Fee Application should be disallowed because it blurs the line between the Trustee's role and the role of counsel.

A chapter 7 Trustee's duties are discussed under § 704.  In exchange for performing the duties discussed therein, Trustees are entitled to "reasonable compensation" under § 330(a) subject to limitations under § 326(a).  Subject to court approval, a Trustee may retain professional persons to aid the Trustee in administering a case.  The estate's retention of a professional person does not alleviate the Trustee of his or her duties.[2]  Thus, a court should not approve professional compensation for carrying out the Trustee's duties.[3]  Indeed, § 328(b) provides:

> If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the

---

[2]In re Kusler, 224 B.R. 180, 186 (Bankr. N.D. Okla. 1998); In re Santangelo and Co., Inc., 156 B.R. 62, 64 (D. Colo. 1993).

[3]Id.

6

> trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

Thus, a trustee serving as his or her own counsel "must distinguish compensation for legal work from work generally performed by the trustee without the assistance of counsel."[4] A burden is placed with the trustee to show that the compensation requested by counsel does not overlap with the trustee's independent duties.[5] "In order to meet this burden, the trustee must provide detailed time records and descriptions of services performed which establish that the services for which compensation is sought are legal in nature."[6] The time records and descriptions should be sufficiently detailed to support the Court's determination that the services rendered required the legal expertise.[7]

After reviewing the Fee Application and the Trustee's testimony at the hearing on this matter, the Court determines that Woodbury & Kesler has not met its burden to show that all of the fees requested are for legal counsel only. The Court's concerns fall into two categories. First, the fees requested cover numerous discussions and conferences between the Trustee and other members of her law firm. From the evidence presented, it is not clear to the Court that the Trustee's presence in these meetings was in her role as counsel for the estate. If the Trustee had retained a different law firm as counsel, she would still need to meet and confer with counsel and the estate would not need to pay additional fees for Ms. Loveridge's time.

The second source for the Court's concern is numerous entries in the Fee Application for

---

[4] Hansen, Jones & Leta, P.C. v. Segal, 220 B.R. 434, 458 (D. Utah 1998).

[5] Kusler, 224 B.R. at 186-87.

[6] Id.

[7] Id.

correspondence between various members of Woodbury & Kesler and third parties. Many entries are for communications between Ms. Loveridge and Tom Erkelens, the Trustee's auctioneer. Ms. Loveridge testified at the hearing on this matter that the property at issue in this case is located in southern Utah, and Mr. Erkelens did much of the "foot-work" in pursuing questions relating to title of the property. The Court is not persuaded that the conversations with Mr. Erkelens required legal expertise. If Ms. Loveridge had retained a different law firm as counsel, she would still need to communicate on a regular basis with her auctioneer in connection with her Motion to Sell property of the estate, but only as Trustee and not as Trustee's counsel.

Other entries are for communications between various members of Woodbury & Kesler and various title companies. The Court is not persuaded that these entries included attorney work. Much of the Trustee's work in this case involved an attempt to sell property of the estate. If the Trustee had retained a separate law firm as counsel, she would still be required to communicate with title companies to facilitate the sale. The Trustee testified that communications with title companies were in connection with attempts to locate the legal title holder of property in this case. This appears to be work that a Trustee would normally perform and do not appear to have required legal expertise.

On the other hand, the Fee Application and the Trustee's Response to CPB's Objection make clear that  time spent communicating with Jim Bradshaw and Jason McNeil was properly associated with providing legal services to the estate. Mr. McNeil is counsel for CPB and Mr. Bradshaw is counsel for various parties holding long-term leases on property of the estate. The Trustee's Response to CPB's Objection to the Fee Application makes clear that the estate's

relationship with CPB and with the leaseholders involved several complex legal issues. Given the nature of these legal issues, the Court would expect any communications involving the leaseholders or CPB to be made in the presence of Trustee's legal counsel.

In sum, the Court determines that Woodbury & Kesler has not carried its burden to show that some of the services covered by the Fee Application by Ms. Loveridge were separate from performing her duties as Trustee. Specifically, the entries listed on Attachment A to this Memorandum Decision should be disallowed as legal services. This is not to say that the services at issue should not be paid. The Court determines only that the services may not be compensated as legal services. Whereas CPB has shown that some of the fees at issue are inappropriate for payment to Woodbury & Kesler, it has not shown that they would be inappropriate if paid to the Trustee. The Trustee has yet to file a fee application but she testified at the hearing on this matter that she bills her trustee time at the same rate as for legal services.

### C.  Remaining Fees are Necessary, Reasonable and not Duplicative

CPB's final objection is that many of the fees requested are for unnecessary, unreasonable, and duplicative services. This objection appears to arise under the Court's determination of reasonableness required by § 330(a).

In determining whether requested professional fees are reasonable, the Court should consider: 1) the time and labor involved; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) the contingent nature of the fee; 7) time limitations imposed by the client or other circumstances; 8) the amount involved and the results obtained; 9) the reputation and ability of the attorneys; 10) the 'undesirability' of the

case; and 11) awards in similar cases.[8]

With the exception of the fees discussed in Attachment A to this Memorandum Decision, the Court determines that the fees requested are reasonable under the above analysis. The Court converted the case from chapter 11 to chapter 7 after lifting the automatic stay to allow Nimbus to foreclose on the debtor's real property. It was believed at the time of conversion that the estate lacked sufficient funds to propose an effective plan of reorganization. The Trustee and her counsel's efforts in this case returned sufficient funds to the estate to pay all creditors other than Nimbus and CPB in full. This is an impressive result which required significant legal analysis and negotiations on the part of the Trustee's counsel. With the exception of the fees discussed in Attachment A, the Court believes the fees requested are not duplicative and are actual, necessary, and reasonable.[9]

## IV. CONCLUSION

The Trustee's Fee Application should be granted in part and denied in part. A separate Order accompanies this memorandum Decision.

---

[8]In re Miniscribe Corp., 309 F.3d 1234, 1241 (2002) (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

[9]The Court notes that the Fee Application also requests compensation for costs. CPB does not object to theses costs, and the Court specifically finds that they were reasonable and necessary.

# ATTACHMENT A

|  |  |  | Hours |
|---|---|---|---|
| 5/19/2006 | ERL | Telephone call from E. Miller regarding real estate | .30 |
| 5/23/2006 | ERL | Telephone call to Title Co. Regarding status of titles on leases | .30 |
| 5/30/2006 | ERL | Conference with title company regarding title report. | .30 |
| 7/10/2006 | ERL | Conference with D. Nill regarding avoidance actions. | .30 |
| 7/13/2006 | DAN | Telephone call to Erkelens | .20 |
| 7/13/2006 | ERL | Telephone call from T. Erkelens regarding survey issues. | .30 |
| 8/7/2006 | DAN | Telephone call to Tom Erkelens. | .20 |
| 8/7/2006 | ERL | Telephone call from leaseholder regarding sale issues. | .40 |
| 8/30/2006 | ERL | Review correspondence from T. Erkelens regarding personal property | .20 |
| 8/30/2006 | ERL | Conference with D. Williams and D. Nill regarding strategy for selling the real property and personal property. | .80 |
| 7/10/2006 | ERL | Conference with T. Erkelens regarding real property and possible auction issues. | 1.00 |
| 8/15/2006 | ERL | Conference with D. Nill regarding strategy for sale (.5) Telephone call to T. Erekelens [sic] regarding sale issues (.3) Telephone call from T. Erkelens regarding sale issues (.2) | 1.00 |
| 8/21/2006 | DRW | Telephone conference with Tom Erkelens re: sale | .30 |
| 8/24/2006 | ERL | Review and sign notice of interests | .30 |
| 8/30/2006 | ERL | Telephone call from T. Erkelens regarding issues pertaining to the sale of the real and personal property. | .30 |
| 8/30/2006 | DRW | Telephone conference with Tom Erkelens | .30 |
| 9/7/2006 | ERL | Telephone call from T. Erkelens regarding sale issues. | .20 |
| 9/11/2006 | ERL | Conference with T. Erkelens regarding sale issues (.5); Telephone call to Litchfiled [sic] Capital regarding sale issues (.2) | .70 |
| 9/14/2006 | ERL | Conference with Tom Erkelens regarding sale. | .40 |
| 9/15/2006 | ERL | Telephone call from T. Erkelens regarding sale issues (.3); Conference with D. Williams regarding sale issues (.4). | .70 |
| 9/20/2006 | ERL | Telephone call to T. Erkelens regarding terms of sale | .40 |
| 9/27/2006 | ERL | Telephone call from Tom Erkelens re: sale. | .20 |
| 9/27/2006 | ERL | Conference with D. Williams and D. Nill regarding sale issues. | .80 |
| 9/28/2006 | ERL | Conference with D. Williams regarding sale issues and strategy for sale | 1.00 |
| 9/29/2006 | ERL | Conference with D. Williams regarding sale issues and strategy. | 1.00 |
| 9/29/2006 | ERL | Telephone call from creditor regarding status of sale. | .20 |
| 10/2/2006 | ERL | Conference with D. Williams and D. Nill regarding sale issues | 1.00 |
| 10/3/2006 | ERL | Conference with D. Nill and D. Williams regarding same | 1.00 |
| 10/4/2006 | ERL | Conference with D. Williams regarding sale issues (.3); Telephone call to Bankruptcy Court regarding hearing times (.2) | .50 |
| 10/16/2006 | ERL | Conference with D. Williams regarding sale issues and offer on | |

|  |  |  |  |
|---|---|---|---|
|  |  | sale of lots | 1.00 |
| 10/17/2006 | ERL | Conference with D. Williams regarding strategy and evidence for sale hearing. | 1.5 |
| 10/18/2006 | ERL | Conference with D. Williams regarding sale issues and strategy for hearing | 1.5 |
| 10/23/2006 | ERL | Conference with Erkelens regarding hearing and tesitmony [sic] (.6); Conference with parties after hearing regarding settlement issues (.4) | 1.00 |
| 10/24/2006 | ERL | Telephone call to D. Williams regarding outcome of auction sale and settlement issues | .50 |
| 10/26/2006 | ERL | Conference with D. Williams regarding settlement agreements and hearing issues. | .50 |
| 10/27/2006 | ERL | Conference with T. Erkelens regarding report of auction (.6); telephone call to Guardian Title regarding closing parameters (.4); telephone call to Southern Utah regarding closing issues (.6) | 1.60 |
| 10/30/2006 | ERL | Telephone call from title company regarding closing issues | .30 |
| 11/3/2006 | ERL | Telephone call from title company regarding closing (.2). | .20 |
| 11/9/2006 | ERL | Conference with D. Williams regarding closing issues | .40 |
| 11/10/2006 | ERL | Telephone call to title company regarding closing issues (.3); Telephone call to title company regarding closing and assignment of asset (.5) | .80 |
| 11/15/2006 | ERL | Telephone call from Southern Utah Title regarding closing assignments (.2); Review and sign assignment (.4) | .60 |
| 11/16/2006 | ERL | Telephone call from title company regarding closing (.2); Telephone call to title company regarding closing issues (.2); Telephone call to title company regarding assignment s(.2) | .40 |
| 11/17/2006 | ERL | Telephone call to title company regarding closing (.2); Review email from title company regarding closing (.2); Telephone call from title company regarding closing (.2) | .60 |
| 11/20/2006 | ERL | Telephone call from G. Title regarding closing issues (.2); Telephone call to Title company regarding closing issues (.2); Telephone call from Title company regarding payoff issues (.2) | .60 |
| 11/21/2006 | ERL | Conference with title company regarding sale of lot and extension | .30 |
| 11/28/2006 | ERL | Telephone call to Guardian Title regarding closing on last lot (.2); Telephone call from Guardian Title regarding closing on last lot (.2); Telephone call from T. Erkelens regarding closing on last lot (.3) | 1.30 |
| 11/30/2006 | ERL | Telephone call to title company regarding closing of final lot (.2); Telephone call from title company regarding closing of final lot (.2); Review amended closing documents (.3); Telephone call from T. Erkelens regarding final lot closing and payment (.2) | .90 |
| 12/14/2006 | ERL | Conference with D. Williams regarding trust deeds for CBC | .50 |

**Total Hours Disallowed for ERL:**       **28.1 ($200 per hour) = $5,620**
**Total Hours Disallowed for DAN:**       **.4 ($145 per hour) = $58**

**Total Hours Disallowed for DRW:** .6 ($190 per hour) = $114



13

Service of the foregoing **MEMORANDUM DECISION ALLOWING INTERIM COMPENSATION TO WOODBURY & KESLER** will be effected through the Bankruptcy Noticing Center to each party listed below.

David Williams
David Nill
Elizabeth Loveridge
Woodbury & Kesler
265 East 100 South, Suite 300
P.O. Box 3358
Salt Lake City, UT 84110-3358

Laurie Cayton
U.S. Trustee
Ken Garff Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111

James Magelby
Jason McNeil
Magelby & Greenwood, P.C.
170 South Main Street, Suite 350
Salt Lake City, UT 84101

D. Miles Holman
Jeffrey Walker
Holman Walker & Hutchings
9537 South 700 East
Sandy, UT 84070